IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOLORES LINDSAY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN[1], | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | No. 12-7159 |

## REPORT AND RECOMMENDATION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Dolores Lindsay brought this action under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").  Presently before this court are plaintiff's request for review, the Commissioner's response, and plaintiff's reply.  For the reasons set for below, we recommend that plaintiff's request for review be GRANTED and the matter be REMANDED for further proceedings.

I.      FACTUAL AND PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on February 19, 2010, alleging disability beginning June 30, 2008.  (Tr. 14).  On September 17, 2010, the Social Security

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for previous Commissioner Michael J. Astrue as defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administration denied plaintiff's claims.  Id.  Plaintiff subsequently requested a hearing before

an Administrative Law Judge ("ALJ").  Id.  On November 29, 2011, ALJ Javier A. Arrastia held

a hearing, and plaintiff as well as Gary A. Young, an impartial vocational expert, testified.  Id.

Plaintiff was represented at the hearing by Marjorie Portney, Esquire.  Id.  On February 6, 2012,

the ALJ issued an opinion finding plaintiff not disabled under the Act from June 30, 2008

through the date of the opinion.  (Tr. 14-24).  Plaintiff filed a request for review, and on

November 15, 2012, the Appeals Council denied plaintiff's request for review, making the ALJ's

decision the final decision of the Commissioner.  (Tr.1-3).  Plaintiff subsequently commenced

this civil action with the assistance of counsel.

II.     LEGAL STANDARDS

Upon judicial review, this court's role is to determine whether the ALJ's decision

is supported by substantial evidence.  42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552

(1988).  "Substantial evidence is more than a mere scintilla but may be somewhat less than a

preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Moreover, it is relevant evidence viewed objectively as adequate to support a decision.

Richardson v. Perales, 402 U.S. 389, 401 (1971); Kangas v. Bowen, 823 F.2d 775 (3d Cir.

1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  In determining whether

substantial evidence exists, the reviewing court may not weigh the evidence or substitute its own

conclusion for that of the ALJ.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).  If the court

determines the ALJ's factual findings are supported by substantial evidence, then the court must

accept the findings as conclusive.  Richardson, 402 U.S. at 390; Plummer v. Apfel, 186 F.3d 422,

427 (3d Cir. 1999).  It is the ALJ's responsibility to resolve conflicts in the evidence and to

determine credibility and the relative weights to be given to the evidence.  Richardson, 402 U.S. at 401.  While the Third Circuit has made it clear that the ALJ must analyze all relevant evidence in the record and provide an explanation for disregarding evidence, this requirement does not mandate the ALJ "to use particular language or adhere to a particular format in conducting his analysis."  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, it is meant "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Id.  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To establish a disability under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57 (3d Cir. 1988) (quoting Kangas, 823 F.2d at 777); 42 U.S.C. § 423(d)(1) (1982).  The claimant satisfies his burden by showing an inability to return to his past relevant work.  Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979) (citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966)).  Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the economy.  20 C.F.R. § 404.1520.  See Rossi, 602 F.2d at 57.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any.  If you are doing substantial gainful activity, we will find that you are not disabled.

3

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.   ADMINISTRATIVE LAW JUDGE'S DECISION

Using the above-mentioned five-step sequential evaluation process, ALJ Arrastia determined that plaintiff had not been under a "disability," as defined by the Act, from June 30, 2008, through the date of the decision. (Tr. 23).

At step one, ALJ Arrastia found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 16). While plaintiff worked after the alleged disability onset date, earning $4,872.00 in 2009 and $296.00 in 2010, the ALJ found that this work activity did not rise to the level of substantial gainful activity under the Regulations. Id. At step two, ALJ Arrastia found that plaintiff had the following severe impairments: rheumatoid arthritis, diabetes mellitus, fibromyalgia, and obesity. (Tr. 16). ALJ Arrastia's determinations as

4

to plaintiff's medical impairments were based on medical evidence of record, which we have independently reviewed and summarize as follows:

Exhibit 13F: Howard S. Baker, M.D., began mental health treatment of plaintiff on June 24, 2004. (Tr. 624). On September 15, 2010, Dr. Baker provided plaintiff's treatment records through August 2010 as well as a summary of plaintiff's treatment. (Tr. 624-44). Dr. Baker diagnosed plaintiff with major depression (296.3), with severity ranging between severe to in remission, attention deficit/hyperactivity disorder (314.01) since childhood, Type I diabetes, arthritis, obstructive sleep apnea, coronary artery disease, hypertension, hypothyroidism, controlled with synthroid, proliferative diabetic retinopathy, carpal tunnel syndrome, and trigger finger. (Tr. 624).

Additionally, Dr. Baker summarized plaintiff's activities of daily living as being able to drive a car, but only able to partially maintain a household and there are two to three days per month when she does not leave the house, dress, or brush her teeth. Id. In terms of social functioning, plaintiff was fired from or did not have her contract renewed from three jobs, most recently in September 2009 after only five days on the job due to inadequate performance. Id. There are times when her husband or son complained about her rude remarks. Id. Under concentration, persistence, or pace, plaintiff does not complete tasks that she starts at home, her ability to concentrate is diminished, and she has only partly responded to ADHD medications. Id. Under episodes of deterioration or decompensation, Dr. Baker described plaintiff has having periods of uncontrollable anger and plaintiff "took a handful of pills" during one episode, which required involuntary hospitalization after the police were called. (Tr. 642). Plaintiff also deliberately increased the amount of insulin to her insulin pump during an episode. Id. While

the episodes usually do not require hospitalization, the frequency of the episodes is once or twice a month.  Id.  Dr. Baker also commented on plaintiff's physical issues, including arthritis, diabetes, and ability to stand.  Id.  In addition to deliberately increasing her insulin dosage, plaintiff deliberately eats inappropriately for a diabetic, which causes her hemoglobin to increase.  Id.  Dr. Baker prescribed plaintiff medications throughout treatment, which included Aplenzin, Wellbutrin, Pristiq, Adderall, Lexapro, Cymbalta, and Focalin.  (Tr. 624-25, 642-43).

Dr. Baker indicated an overall "downhill" trajectory in plaintiff's treatment, which includes some gradual deterioration in her memory and ability to control emotions.  (Tr. 642).  Many of plaintiff's sessions were joint sessions with her husband.  (Tr. 642).  Plaintiff's counseling sessions involved discussion of anger issues and conflicts with her husband and children.  (See e.g., Tr. 627-29).  Plaintiff had counseling sessions on average once or twice a month.  (Tr. 626-641).  On May 15, 2006, plaintiff indicated feeling overwhelmed by her anger and chronic feelings of depression.  (Tr. 631).  Dr. Baker prescribed a trial of Abilify.  Id.  On September 14, 2006, Dr. Baker reported plaintiff having gotten "out of control" after running out of her Cymbalta medication and that the police were called, leading to plaintiff's hospitalization due to plaintiff taking other pills and taking too much insulin.  (Tr. 632).  Plaintiff continued to discuss marital problems and desire for separation.  Id.  Plaintiff's progress and discussion of marital issues remained up and down between visits (i.e., some visits indicated positive progress, others indicated setbacks in the relationship).  (Tr. 633, 635).  Plaintiff lost her job as of March 21, 2007 when her contract ended and was not renewed.  (Tr. 634).  In September 2007, Dr. Baker reported that plaintiff was not managing her diabetes.  (Tr. 635).  In November 2007, plaintiff reported that her employment contract was only until December 2007, rather than 2008,

and plaintiff's employer reported plaintiff was not progressing as expected.  Id.  Dr. Baker

reported plaintiff was doing well in January 2008 and plaintiff had joined Weight Watchers.  Id.

Plaintiff reported relationship troubles with her husband in May 2008, which continued through

August 2008, which was her last visit of the year.  (Tr. 636-37).

On January 27, 2009, plaintiff indicated being depressed and feeling worthless,

however, not suicidal.  (Tr. 637).  In March 2009, plaintiff indicated she was doing better, the

Deplin was helping and she was taking her medications regularly.  (Tr. 637).  Plaintiff started

new employment in September 2009 and Dr. Baker noted that plaintiff had an improved mood.

(Tr. 638).  In October 2009, plaintiff was laid off along with two other new hires.  Id.  Plaintiff

had a low mood in November, which coincided with a reduction in dosage of Cymbalta due to

side effects.  Id.  Plaintiff had an improved mood in December, but then her mood was "up and

down" in February 2010.  (Tr. 638-39).  Plaintiff indicated during her March session that she had

applied for disability because she cannot work a full eight-hour day and has had trouble

"catching on" since the fall of 2004, which may be linked to her diabetes.  (Tr. 639).  Plaintiff

had improved mood between April and May 2010 and plaintiff was keeping herself busy

gardening and knitting.  (Tr. 640).  In August 2010, plaintiff reported financial struggles and

family conflicts.  (Tr. 641).

Exhibit 24F:  In December 2010, Dr. Baker reported plaintiff was doing well;

however, over the holidays plaintiff had a hypoglycemia episode and she was unable to complete

a minor home repair due to tremendous pain.  (Tr. 768).  Dr. Baker indicated that at this time

plaintiff was "completely unable to work," but plaintiff's rheumatologist approved "small, non-

taxing volunteer things."  Id.  Plaintiff was looking into volunteering for a few hours at a thrift

store or helping her elderly neighbor get to doctor appointments.  Id.  Dr. Baker noted: "I see

these as an assessment of her ability to work, but it is clear that she cannot do these sorts of

activities for more than a very few hours."  Id.  On April 4, 2011, plaintiff discussed her

disability with Dr. Baker and indicated that she needs to use the shopping cart as a "walker" at

the grocery store and she is very tired after going to the store or taking her neighbor to the

doctor.  (Tr. 769).  With the exception of several family conflicts, plaintiff was doing well in July

2011.  Id.  As of October 31, 2011, Dr. Baker indicated diagnoses of attention

deficit/hyperactivity disorder, major depression in partial remission, inflammatory arthritis not

well controlled, diabetes with complications, sleep apnea, hypothyroid disease controlled with

medication, hypertension controlled with medication, hypercholesterolemia controlled with

medication, and status post cataract surgery bilaterally.  (Tr. 770).

       Exhibit 5B:  Dr. Baker completed a Mental Impairment Residual Functional

Capacity Questionnaire for plaintiff on June 26, 2011.  (Tr. 117-22).  Dr. Baker reported a

diagnosis of major depression in partial remission, recurrent (296.35) and prescribing

antidepressant medications, including Pristiq and Bupropion or Aplenzin.[2]  (Tr. 117).  Under

questions relating to plaintiff's mental abilities to perform unskilled work, Dr. Baker indicated

that plaintiff is unable to meet competitive standards for maintaining attention for two hour

segments, maintaining regular attendance, completing a normal workday and workweek without

interruptions from psychologically based symptoms, and performing at a consistent pace without

an unreasonable number and length of rest periods; plaintiff is seriously limited but not

precluded from remembering work-like procedures, understanding and remembering very short

_____

[2] One other prescription is listed, which is illegible.

and simple instructions, sustaining an ordinary routine without specific supervision; plaintiff is limited but satisfactory in making simple work-related decisions, accepting instruction and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, dealing with normal work stress, and being aware of normal hazards and taking precautions; and plaintiff is unlimited or very good in carrying out very short and simple instruction, working in coordination with or proximity to others without being unduly distracted, asking simple questions or requesting assistance, and responding appropriately to changes in a routine work setting.  (Tr. 119).

Regarding plaintiff's ability to perform skilled work, Dr. Baker found that plaintiff was unable to meet competitive standards for understanding and remembering detailed instructions and carrying out detailed instructions; plaintiff was seriously limited, but not precluded from setting realistic goals or making plans independently of others; and plaintiff was limited, but satisfactory in the ability to deal with stress of semiskilled and skilled work.  (Tr. 119).  In terms of the ability to do particular types of jobs, Dr. Baker found plaintiff unlimited or very good at interacting appropriately with the general public, traveling in an unfamiliar place, and using public transportation; and limited, but satisfactory in maintaining socially appropriate behavior and adhering to basic standards of neatness.  (Tr. 120).

Dr. Baker concluded plaintiff has a low IQ or reduced intellectual functioning based on the fact that she has lost two jobs due to unsatisfactory performance and was previously able to do that type of work.  (Tr. 120).  Dr. Baker found that plaintiff's depression and physical pain make the other worse.  Id.  In the four broad functional areas, Dr. Baker found that plaintiff had moderate limitation in activities of daily living, none or mild limitation in social functioning,

marked difficulties in concentration, persistence, or pace, and four or more episodes of decompensation within 12 month periods, each of at least two weeks duration.  Id.

        Exhibit 15F: Office treatment records from April 2010 through October 2010 at Main Line Health Center indicated treatment for plaintiff's diabetes, hypertension, and high cholesterol.  (Tr. 647-665).  Plaintiff's treatment provider also indicated depression.  (Tr. 650). Additional records indicated treatment for plaintiff's vision problems.  Joseph I. Maguire, M.D., evaluated plaintiff on February 27, 2009 for proliferative disease at Mid Atlantic Retina.  (Tr. 665).  Dr. Maguire reported that plaintiff had responded well to treatments and her vision was "excellent" with 20/25 in each eye and plaintiff was completely stable.  Id.  Dr. Maguire re-evaluated plaintiff on March 19, 2010 and reported elevated A1C, which the American Diabetes Association defines as a test that provides an average blood glucose control for the past two to three months.  (Tr. 664).  Dr. Maguire reported 20/40 + 2 vision in the right eye and 20/30 vision in the left eye.  Id.

        Exhibit 10E:  Plaintiff completed a function report on March 26, 2010, indicating her diabetes and arthritis have affected her ability to complete her job responsibilities.  (Tr. 240). Plaintiff explained that her daily activities include waking at 7:30 a.m., eating breakfast, washing, brushing teeth, and dressing for the day, followed by meeting or talking on the phone with friends or family, knitting or crocheting, attending doctor appointments several times a week, completing small errands like shopping, banking, or pharmacy, eating lunch, napping, watching TV and preparing a meal for her husband.  (Tr. 241).  Plaintiff has difficulty squatting, standing, walking, kneeling, and completing tasks.  (Tr. 245).  At this time, plaintiff's medications were Methotrexate, Pristig, and Asaplentin.  (Tr. 247).

Exhibit 2A:  As part of plaintiff's Disability Determination Explanation, Gregory McCormack, M.D., a DDS medical consultant, completed a residual functional capacity assessment of plaintiff.  (Tr. 82-83).  Dr. McCormack found that plaintiff is able to occasionally lift and/or carry fifty (50) pounds, frequently lift and/or carry twenty-five (25) pounds, stand and/or walk for approximately six (6) hours in an eight (8) hour work day, sit for approximately six (6) hours in an eight (8) hour work day, and is unlimited in the ability to push and/or carry.  (Tr. 82).  Additionally, Dr. McCormack found that plaintiff has postural limitations as follows: plaintiff is able to no more than frequently climb ramps/stairs, occasionally climb ladders/ropes/scaffolds, frequently balance, frequently stoop, frequently kneel, frequently crouch, and frequently crawl.  (Tr. 82-83).  Dr. McCormack found that plaintiff had no manipulative limitations, visual limitations, communicative limitations, or environmental limitations.  (Tr. 83).

Exhibit 18F/25F:  Stephanie Flagg, M.D. began treating plaintiff on August 25, 2008 and saw plaintiff every two to four months for plaintiff's fibromyalgia, autoimmune inflammatory arthritis, calcium pyrophosphate deposition disease ("CPPD") arthropathy, and spinal stenosis of the lumbar spine.  (Tr. 711).  On December 7, 2010, plaintiff saw Dr. Flagg for arthritis follow up.  (Tr. 811).  Plaintiff's active problems included unspecified abnormal function study of cardiovascular system, coronary atherosclerosis of native coronary artery, hyperlipidemia, hypertension, inflammatory polyarticular arthritis, pure hypercholesterolemia, and spinal stenosis-lumbar.  Id.  Dr. Flagg provided an assessment of sleep apnea.  (Tr. 812).

On February 8, 2011, plaintiff saw Dr. Flagg again for arthritis follow up.  (Tr. 786).  After taking Enbrel for three months, it had not been effective and plaintiff still had back

pain.  Id.  Plaintiff had not completed the exercises for her back and she has pain in her legs and arms as well as her knees.  Id.  Plaintiff reported her pain as five (5) to six (6) out of ten (10) and her back pain was intensified when standing or lifting.  Id.  Plaintiff's back pain eases when she sits and it is easier for her to walk when she has a cart in front of her.  Id.  Among plaintiff's listed symptoms, of relevance, Dr. Flagg also indicated symptoms of anxiety and depression. (Tr. 806).   Dr. Flagg assessed plaintiff as having polyarticular arthritis with a pattern suggestive of spondylarthropathy, but intolerance of methotrexate and  a failure to be treated with Humira and Enbrel.  (Tr. 789).  Plaintiff's back pain is likely spinal stenosis since it eases when she sits down.  Id.  Plaintiff is unable to afford the co-pay for physical therapy.  (Tr. 786).

On June 7, 2011, plaintiff saw Dr. Flagg for another follow up visit regarding her arthritis.  (Tr. 778).  Plaintiff indicated that she is unable to perform activities that she was previously capable of performing and she feels exhausted after two (2) hours.  Id.  Plaintiff lacked strength in her arms and legs and has chronic low back pain.  Id.  Plaintiff stated she is unable to walk for five (5) minutes without having muscle aches in her legs.  Id.  Dr. Flagg opined that plaintiff has treatment resistant inflammatory arthritis, lumbar stenosis, and fibromyalgia.  (Tr. 785).  Dr. Flagg stated she does not believe plaintiff is capable of work due to her chronic pain, and this inability to work is permanent due to the failure of treatment modalities and treatment resistant anxiety and depression.  Id.

Based on treatment of plaintiff, Dr. Flagg completed a musculoskeletal residual functional capacity/pain questionnaire for plaintiff on June 7, 2011.  (Tr. 711-19).  Dr. Flagg found that plaintiff is unable to walk one-half (1/2) block due to pain in her legs and plaintiff needs to take frequent naps due to her fatigue.  (Tr. 712).  Additionally, Dr. Flagg noted that

plaintiff's anxiety and depression play a factor in plaintiff's functional limitations and restrictions and plaintiff's obesity may worsen plaintiff's leg pain.  Id.  Dr. Flagg indicated through the form that plaintiff's Chronic Pain Syndrome has affected plaintiff's ability to work and the pain has led to irritability and depression.  (Tr. 714).  Dr. Flagg listed plaintiff as able to sit for thirty (30) minutes, stand for ten (10) minutes, and stand/walk for less than two (2) hours and sit for less than six (6) hours in an eight-hour workday; however, plaintiff must also be able to walk during the workday every twenty (20) to thirty (30) minutes for approximately two (2) minutes.  (Tr. 716).  Dr. Flagg determined that plaintiff needs a job that permits shifting positions at will and the ability to take unscheduled breaks.  Id.  Additionally, plaintiff is able to rarely lift ten (10) pounds or less, rarely twist, stoop, or crouch, never climb ladders, and occasionally climb stairs.  (Tr. 717).  Plaintiff's manipulation limitations are due to tenderness, soft tissue swelling, and reduced grip strength in wrists, hands, or fingers.  Id.  Plaintiff has additional limitations in reaching, handling or fingering.  (Tr. 718).  However, Dr. Flagg did not further describe how other limitations, including psychological, may affect plaintiff's ability to work. (Tr. 719). Dr. Flagg further indicated that she found plaintiff's pain complaints to be credible in light of the joint inflammation and Dr. Flagg found that plaintiff's chronic depression and anxiety will worsen the underlying pain.  (Tr. 721-22).

Dr. Flagg saw plaintiff again on September 6, 2011 for arthritis follow up.  (Tr. 771).  Plaintiff indicated that Meloxicam had not helped so she discontinued use.  Id.  Plaintiff's knees were the same, her hands were not bad, except in the morning, her back was also not bad, and plaintiff had been feeling better after exercising.  Id.  Dr. Flagg prescribed Tylenol for her spinal stenosis-lumbar and a follow up appointment in three (3) to four (4) months.  (Tr. 774).

13

Exhibit 19F/21F:  On June 14, 2011, Ady Djerassi, M.D., completed a diabetes mellitus residual functional capacity questionnaire.  (Tr. 725-31).  Dr. Djerassi had treated plaintiff every three to four years since 2003 for plaintiff's diabetes.  (Tr. 725).  Plaintiff's overall prognosis was listed as "fair."  Id.  Dr. Djerassi listed plaintiff's symptoms as follows: fatigue, difficulty walking, chronic skin infections, muscle weakness, retinopathy, psychological problem, insulin shock/coma, extremity pain and numbness, sweating, difficulty thinking/concentration, and hyper/hypoglycemic attacks.  Id.  Dr. Djerassi indicated that plaintiff has suffered from retinitis proliferans, which has required laser eye surgery, and emotional factors, such as depression, anxiety, and mood changes, have affected plaintiff's physical condition.  (Tr. 726-27).

Dr. Djerassi noted that plaintiff is unable to sit or stand for long periods of time, is easily fatigued, and cannot walk one-half (1/2) block without leg pain and weakness.  (Tr. 727).  Plaintiff can sit for no longer than twenty (20) minutes at one time, stand only ten (10) minutes at one time, and stand/walk less than two (2) hours and sit for about four (4) hours in an eight-hour workday.  (Tr. 728-29).  Plaintiff needs to be able to shift positions at will and take unscheduled breaks during an eight-hour workday.  (Tr. 729).  Plaintiff may occasionally lift less than ten (10) pounds, rarely lift ten (10) pounds, and never lift twenty (20) or more pounds.  Id.  Additionally, plaintiff may occasionally twist, rarely stoop, climb ladders or stairs, and never crouch or squat.  (Tr. 730).  Plaintiff does not have significant limitations with reaching, handling, or fingering.  Id.  Furthermore, Dr. Djerassi directed that plaintiff must avoid concentrated exposure of extreme cold, heat, humidity, perfume, solvents, fumes, odors, or gases, dust, and chemicals.  Id.

Dr. Djerassi concluded that plaintiff's pain or other symptoms are expected to be

severe enough to frequently interfere with plaintiff's attention and concentration needed to

perform even simple work tasks.  (Tr. 728).  However, Dr. Djerassi opined that plaintiff is able to

handle moderate work stress.  Id.  Overall, as a result of plaintiff's impairments, Dr. Djerassi

found that plaintiff is likely to be absent from work one (1) to two (2) days per month.  (Tr. 730).

On September 6, 2011, Dr. Djerassi saw plaintiff for diabetes follow up treatment.  (Tr. 740).

Dr. Djerassi reported that plaintiff was using her insulin pump and had lost, and maintained, a

significant amount of weight after watching her diet and exercising at a gym.  Id.  At the time of

this visit, plaintiff's weight was 202 pounds and her physical examination did not reveal

abnormality.  Id.

   In continuing with the five step analysis, ALJ Arrastia found at step three that

plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19).  In

making this determination, ALJ considered the Listings in section 9.00, 12.00, and 14.00.  Id.

   At step four, ALJ Arrastia found that plaintiff has the residual functional capacity

to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) in that she is able to lift/carry

up to 10 pounds occasionally and 2 to 3 pounds frequently; stand and walk about 2 hours during

an 8-hour workday; and sit about 6 hours during an 8-hour workday.  Plaintiff can rarely twist,

stoop, bend, crouch, or squat; and occasionally climb stairs, but never climb ladders.  (Tr. 19).  In

formulating this residual functional capacity, the ALJ relied on plaintiff's testimony and

treatment records for plaintiff's arthritis, diabetes, and mental health.  (Tr. 20-23).  The ALJ

afforded the opinion evidence of DDS medical consultant, Dr. McCormack, little weight because

the ALJ found plaintiff more limited in her ability to stand and walk, which has worsened over

time.  (Tr. 21).  The ALJ afforded the medical source statement of plaintiff's treating physician for her arthritis, Dr. Flagg, little weight because other doctors did not find abnormality on physical examination, and the actual examinations by Dr. Flagg were generally benign and did not show significant abnormalities to support Dr. Flagg's finding of disability.  (Tr. 22).  Moreover, the ALJ determined Dr. Flagg relied heavily on plaintiff's subjective complaints, and uncritically accepted these complaints, which rendered the opinion less persuasive.  Id.  The ALJ afforded the medical source statement of plaintiff's treating physician for her diabetes, Dr. Djerassi, little weight because Dr. Djerassi's residual functional capacity assessment provided for more limitations than supported by the treatment records, including a finding in 2011 of no abnormality on physical examination.  Id.  Lastly, the ALJ afforded the medical source statement of plaintiff's mental health provider, Dr. Baker, little weight because the ALJ found Dr. Baker's assessment to be an overestimate of plaintiff's limitations.  (Tr. 22-23).

ALJ Arrastia then concluded that plaintiff was able to perform past relevant work as a drug safety associate and telephone solicitation because the work does not require the performance of work-related activities precluded by plaintiff's residual functional capacity.  (Tr. 23).  The Dictionary of Occupational Titles ("DOT") did not contain an exact match of plaintiff's past relevant jobs; however, the vocational expert testified that plaintiff's work as a drug safety associate is comparable to a paralegal, which is a skilled, sedentary position as performed, and plaintiff's work as a drug information associate is comparable to a telephone solicitation position, which is also a skilled, sedentary position.  Id.  As such, the ALJ found that plaintiff has not been under a disability, as defined by the Act, since June 30, 2008, through the date of the ALJ's decision.  (Tr. 23).

IV.    PLAINTIFF'S CONTENTIONS

Plaintiff alleges four claims: (1) whether the ALJ improperly relied on his own medical analysis regarding concentration, persistence, or pace; (2) whether the ALJ failed to consider the combination of impairments; (3) whether the ALJ erred in finding depression was not a severe impairment; and (4) whether the ALJ failed in finding plaintiff was capable of performing past relevant work.  See Pl. Brief 4/10/13.

V.    DISCUSSION

The Commissioner's findings must be affirmed if they are supported by substantial evidence.  42 U.S.C. § 405(g); Richardson , 402 U.S. at 401.  The role of this court is to determine whether there is substantial evidence to support the Commissioner's decision. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993).  After review of the records, we recommend that the plaintiff's request for review be GRANTED and the matter be REMANDED for further proceedings.

        A.    Whether the ALJ improperly relied on his own medical analysis regarding concentration, persistence, or pace.

Plaintiff alleges that the ALJ erred in applying Listing 12.00 for mental disorders because the ALJ found that plaintiff only had mild difficulties in concentration, persistence, and pace, which was based on ALJ's own assessment and not supported by substantial evidence.  See Pl. Brief 4/10/13 at 3 (citing Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000); Plummer v. Apfel, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405 (3d Cir. 1988); Ferguson v. Schweiker, 765 F.2d 31 (3d Cir. 1985); Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983); Fisher v. Barnhart, 393 F. Supp. 2d 343, 346-47 (E.D. Pa. 2005)).  Specifically, plaintiff argues the ALJ failed to consider Dr. Ady Djerassi's findings that plaintiff had difficulty

concentrating, Dr. Howard Baker's finding that plaintiff had marked difficulties in maintaining concentration, persistence, or pace, and Dr. Stephanie Flagg's assessment that plaintiff's pain or other symptoms are severe enough to interfere with attention and concentration. <u>Id.</u> at 4-5. Plaintiff suggests the ALJ's reference to the "normal mental status examination" in support of his finding is unclear because it does not cite a particular evaluation and is insufficient to sustain the substantiality test by itself. <u>Id.</u> at 6-8. Further, plaintiff contends the ALJ's reliance on plaintiff's ability to knit and crochet in support of the ALJ's finding that plaintiff only has mild concentration limitations fails to take into account they type of memory required for such activities. <u>Id.</u> at 5-6.

In response, the Commissioner contends that the ALJ's finding that plaintiff's mental disorder only caused mild limitations in concentration, persistence, or pace is supported by substantial evidence. <u>See</u> Def. Brief 5/13/13 at 7. Specifically, the Commissioner argues that there is only one mental status examination in the record, authored by Dr. Baker; thus, that is the only examination the ALJ could have been referring to and Dr. Baker's testing demonstrates that plaintiff performed well in all tasks measuring the ability to maintain concentration, persistence, or pace. <u>Id.</u> The Commissioner asserts that the ALJ properly considered plaintiff's activities of daily living, including knitting and crocheting, because such activities are relevant to the finding of plaintiff's ability to maintain concentration, persistence, or pace. <u>Id.</u> at 9. Moreover, the ALJ properly evaluated and weighed the three medical opinions in accordance with the regulation. <u>Id.</u> at 9-11. Upon review of the evidence, we find that the ALJ's conclusion is not supported by substantial evidence and recommend remand on this issue.

The ALJ is required to consider relevant medical evidence from all acceptable

medical sources, which includes licensed physician or a licensed or certified psychologist. <u>See</u> <u>Yensick v. Barnhart</u>, 245 Fed. Appx. 176, 181 (3d Cir. 2007); 20 C.F.R. § 416.913(a). The ALJ should provide a comprehensive analysis of the facts so that the reviewing court may determine whether there is support in the record for the ALJ's evaluation of the medical source opinion. <u>Id.</u> (*citing* <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir. 1981)). A treating physician's opinion may be entitled to substantial or controlling weight if it is supported by acceptable medical diagnostic techniques and consistent with other substantial evidence in the record. <u>Id.</u> (*citing* 20 C.F.R. § 404.1527(d)(2)); <u>see also</u> <u>Plummer</u>, 186 F.3d at 429. While the ALJ must consider the opinions of treating or examining physicians or State agency consultants in evaluating the evidence, the decision ultimately rests in the hands of the ALJ. <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011). Moreover, "'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'" <u>Id.</u> (*quoting* <u>Brown v. Astrue</u>, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). However, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000) (*citing* <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999); <u>Frankenfield v. Bowen</u>, 861 F.2d 405, 408 (3d Cir. 1988); <u>Kent v. Schweiker</u>, 710 F.2d 110, 115 (3d Cir. 1983)).

   In the instant case at bar, the ALJ found that plaintiff's organic mental disorder and affective disorder do not cause more than a minimal limitation in plaintiff's ability to perform basic mental work activities, and therefore, concluded these disorders were not severe.

(Tr. 18).  In reaching this conclusion, the ALJ considered the four broad functional areas, known as "paragraph B" criteria, in Listing 12.00C.  (Tr. 18-19)  At issue here is the finding that plaintiff only had mild difficulties in concentration, persistence or pace.  In discussing this functional area, the ALJ stated the following:

> The claimant averred an inability to concentrate and remember; however, she retains the ability to crochet and knit, which involves a great deal of concentration and focus.  The record reflects that she also had a normal mental status examination.  Therefore, the claimant has the ability to sustain focused attention and concentration sufficiently long to permit timely and appropriate completion of tasks commonly found in work settings.

(Tr. 19).

At step two, the ALJ does not expressly reference Dr. Baker's treatment or findings; however, the ALJ does refer to a "normal mental status examination."  (Tr. 19).  Review of the record demonstrates there was a mini mental state examination ("MMSE") administered by Dr. Baker on March 9, 2010.  (Tr. 639).  The MMSE, also known as the Folstein test, is a screening test for cognitive impairments and is scored from 0 to 30, with 30 being the highest score.[3]  Based on Dr. Baker's notes, plaintiff received a score of 30.  (Tr. 639).  While Dr. Baker did not label these "normal" findings, a subsequent treatment note indicates that plaintiff was aware the MMSE did not show impairment: "[Plaintiff] would rather work, but she recognizes that even though the MMSE was entirely normal, she isn't as sharp as she use to be." (Tr. 639).  In plaintiff's reply, plaintiff directs the court to the distinction between a MMSE and a mental status examination.  Pl. Reply Brief 5/21/13 at 3.  While the Commissioner may be correct that the ALJ intended to refer to this MMSE when stating "normal mental status

---

[3] See *Mental Status Testing*, MEDLINE PLUS – A SERVICE OF THE U.S. NATIONAL LIBRARY OF MEDICINE, NATIONAL INSTITUTE OF HEALTH ("NIH"), available at http://www.nlm.nih.gov/medlineplus/ency/article/003326.htm (last visited 2/10/14).

examination," we cannot make that assumption.  The ALJ must be explicit in his findings and demonstrate the significance of this one-time evaluation in light of treatment records and medical opinions that convey a different picture of impairment.  (Cf. Tr. 639 and 117-20, 624-43, 768-770).  Moreover, the ALJ has failed to address Dr. Baker's findings, including such findings that plaintiff is unable to meet competitive standards for maintaining attention for two hour segments, unable to meet competitive standards completing a normal workday and workweek without interruptions from psychologically based symptoms, and seriously limited but not precluded from remembering work-like procedures, understanding and remembering very short and simple instructions.  (Tr. 119).  Additionally, the ALJ did not address Dr. Baker's functional conclusion that plaintiff suffers marked difficulties in concentration, persistence, or pace.  (Tr. 120).

          While the ALJ subsequently mentioned at step four that he only afforded little weight to Dr. Baker's medical opinion, this discussion also does not address the findings regarding concentration, persistence, or pace other than to refer to plaintiff's activities, which is insufficient to meet the substantiality test.  (Tr. 23).  While the ALJ may consider plaintiff's daily activities in assessing credibility, it is impermissible for the ALJ to substitute his own lay opinion for that of a long-term treating physician.  See Morales, 225 F.3d at 317.  Moreover, the ALJ failed to address the references by Dr. Flagg, plaintiff's rheumatologist, and Dr. Djerassi, plaintiff's endocrinologist, regarding plaintiff's difficulty concentrating.  (See e.g., Tr. 100, 110-13, 715, 725-28).  As such, we cannot find that the ALJ's conclusion regarding concentration, persistence, or pace is supported by substantial evidence and recommend remand for additional proceedings.  Should the ALJ need additional medical opinion evidence, the ALJ should order a consultation evaluation on remand.

B.    <u>Whether the ALJ failed to consider the combination of impairments.</u>

Plaintiff alleges that the ALJ failed to consider the combined impact of all of plaintiff's impairments even though plaintiff's treatment providers connected plaintiff's mental and physical impairments.  <u>See</u> Pl. Brief 4/10/13 at 9.  Specifically, plaintiff contends that plaintiff's physical pain is linked to her depression and anxiety, plaintiff's cognitive difficulties relate to her diabetes, and plaintiff's noncompliance with her diabetes treatment is related to her mental impairments.  <u>Id.</u>  The Commissioner responds that the ALJ expressly considered plaintiff's mental and physical conditions in combination and in fashioning plaintiff's residual functional capacity.  (Def. Brief 5/13/13 at 12).

As discussed in more detail below, see *infra* discussion at Part V.C. and Part V.D., we agree with plaintiff and find that the ALJ failed to consider the combined impact of plaintiff's impairments, specifically when fashioning the residual functional capacity and assessing plaintiff's ability to perform past relevant work.  While the ALJ lists plaintiff's impairments individually at step four, the ALJ does not discuss how plaintiff's mental impairments may impact compliance with diabetes treatment, or how plaintiff's physical pain may contribute to her mental impairments even though treating physicians noted the possible link.  (<u>See e.g.</u>, Tr. 105-07, 112, 642, 720-22, 781).  As such, on remand, in assessing whether plaintiff suffers from more than mild limitation in concentration, persistence or pace, whether plaintiff's depression is a severe impairment, and in fashioning plaintiff's residual functional capacity, the ALJ should expressly discuss the combined impact of plaintiff's impairments.

C.    <u>Whether the ALJ erred at step two in finding plaintiff's depression was not a severe impairment.</u>

Plaintiff alleges that the ALJ erred in finding plaintiff's depression a non-severe

impairment.  See Pl. Brief 4/10/13 at 13.  Plaintiff alleges error in the ALJ's finding that plaintiff only had mild difficulties in concentration, persistence, or pace as described in claim one and that the ALJ failed to take into account the impact of plaintiff's depression on her ability to comply with other daily treatment needs.  Id. at 13-14.  The Commissioner responds by asserting that the ALJ expressly considered plaintiff's depression at step two.  See Def. Brief 5/13/13 at 15.  We find that the ALJ erred at step two in finding plaintiff's depression was not a severe impairment and we recommend remand for additional proceedings.

Step two of the five step process is known as the "severity regulation" because it focuses on whether the claimant is suffering from a severe impairment.  20 C.F.R. § 404.1520(c).  Plaintiff bears the burden of proving that an alleged impairment is severe.  See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  An impairment is severe if it is "of magnitude sufficient to limit significantly the individual's ability to do basic work activities."  Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982); see also 20 C.F.R. § 404.1520(c).  Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  A non-severe impairment is a "slight" abnormality which has a minimal effect on the individual such that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  Bowen v. Yuckert, 482 U.S. 137, 149-51, 107 S. Ct. 2287, 96 L.Ed.2d 119 (1987).  In assessing the severity of an alleged impairment, the ALJ must consider "all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.1529(a).

In the case at bar, plaintiff has a long history of mental health treatment, including

monthly therapy sessions and prescribed medications.  (Tr.624-44).  At step two, the ALJ found

that plaintiff's depression was not a severe impairment.  (Tr. 18).  Pursuant to 12.00C regarding

the assessment of severity for mental disorders, the ALJ considered the four broad functional

areas of "paragraph B:" (1) activities of daily living; (2) social functioning; (3) concentration,

persistence, or pace; and (4) episodes of decompensation.  (Tr. 18-19); see also 20 C.F.R., Part

404, Subpart P, Appendix 1.[4]   The ALJ determined that plaintiff did not meet the paragraph B

criteria because plaintiff has (1) no restrictions in activities of daily living, (2) no more than mild

difficulties in social functioning, (2) only mild difficulties in concentration, persistence, or pace,

and (4) no episodes of decompensation, which were of extended duration.  (Tr. 18-19); see also

20 C.F.R., Part 404, Subpart P, Appendix 1.

        The ALJ found that plaintiff's daily activities include cleaning, shopping,

cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately

for personal hygiene, using telephones and directories, and using a post office.  (Tr. 18).

Additionally, the ALJ referenced plaintiff's hobbies, including knitting, crocheting, gardening,

and attending a two-hour "Stitchery Group" at the local library, and the fact that plaintiff has

been working out at the gym a few times per week for a 30-minute circuit.  Id.  In comparison,

---

[4] The Regulations governing the evaluation of mental impairments specify that the first three functional areas are rated on a five-point scale in terms of the degree of functional limitation: "none," "mild," "moderate," "marked," and "extreme," with extreme representing a degree of limitation that is incompatible with the ability to do any gainful activity.  20 C.F.R. § 404.1520a(c)(3)-(4).  The last functional area is rated in terms of the number of episodes, with four or more indicating the limitation is incompatible with the ability to do work.  Id.  If the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the last area, the impairment is generally found to be not severe unless evidence otherwise indicates that there is more than a minimal limitation.  20 C.F.R. § 404.1520a(d)(1).  When the finding is made by the ALJ at the hearing level, the written decision must incorporate the pertinent findings and conclusions with specific findings as to the degree of limitations in each of the functional areas. 20 C.F.R. § 404.1520a(e)(4).

Dr. Baker's mental residual functional assessment concluded that plaintiff had moderate limitations in activities of daily living. (Tr. 120). We find that the ALJ properly considered plaintiff's activities of daily living, including her testimony and indications by treatment providers, and the finding is supported by substantial evidence.

In terms of social functioning, the ALJ found that plaintiff reported "normal family relationships," plaintiff interacts with others through a weekly hobby group, plaintiff goes to the gym several times per week, and plaintiff takes public transportation without incident. Id. The ALJ recognized the difficulties interacting with immediate family, but found that plaintiff generally retained the capacity to interact independently, appropriately, effectively, and on a sustained basis with other people. (Tr. 18). Dr. Baker's mental residual functional capacity assessment also concluded that plaintiff had none or only mild difficulties in social functioning. (Tr. 120). We find that the ALJ's conclusion that plaintiff has no more than mild limitations in social functioning to be supported by substantial evidence. Plaintiff's mental health counseling focused on her relationship with her husband and children and did not demonstrate an inability to generally interact with others. (See e.g., Tr. 627-29, 633, 635, 642, 769). Plaintiff reported helping her elderly neighbor get to doctor appointments and that plaintiff intended to look for volunteer work at a local thrift store for a few hours. Id.

The ALJ concluded plaintiff had no episodes of decompensation whereas Dr. Baker concluded plaintiff had four or more episodes of decompensation on the mental residual functional capacity assessment form. (Tr. 120). The ALJ did not discuss Dr. Baker's assessment, which indicated periods of uncontrolled anger and a resulting hospitalization due to mismanagement of medications. (Tr. 642, 632). As such, we cannot find that this conclusion is

25

supported by substantial evidence, and on remand, the ALJ should specifically address these treatment records of uncontrolled anger and episodes of not complying with diabetic treatment.

As discussed above, see *supra* Part V.A., we find that the ALJ's conclusion regarding plaintiff's limitations in concentration, persistence, or pace is not supported by substantial evidence.  Accordingly, because we find that the ALJ erred in assessing at least two of these functional areas, we find that the ALJ erred in his analysis of plaintiff's depression and recommend remand for additional proceedings.

> D.  Whether the ALJ failed in finding plaintiff was capable of performing past relevant work.

Plaintiff alleges that the ALJ erred in finding plaintiff was able to perform past relevant work, which the Social Security Administration previously determined to be SVP 6 and SVP.  See Pl. Brief 4/10/13 at 17.  The vocational expert testified that the DOT did not contain exact matches for plaintiff's past work as a drug information associate and drug safety associate, but the drug safety associate position was comparable to a paralegal, which is a skilled, sedentary position with a SVP of 7, and the drug information associate position was comparable to a telephone solicitor, which is a skilled, sedentary position with a SVP of 3.  Id.  Plaintiff alleges the ALJ erred by failing to include mental restrictions in plaintiff's RFC even though the ALJ found that plaintiff's medically determinable affective disorder causes mild difficulties with concentration, persistence, or pace.  Id. at 19.  The Commissioner responds by asserting that the ALJ's hypothetical posed to the vocational expert adequately accounted for plaintiff's functional limitations that were supported by the record and the vocational expert testified that such an individual would be able to perform plaintiff's past relevant work as a drug safety associate.  See Def. Brief 5/13/13 at 20 (*citing* Tr. 23, 65-68).  We find that the ALJ erred in failing to include in

the residual functional capacity mental limitations that the ALJ himself found at prior steps and we recommend remand for further proceedings.

        At step four of the analysis, the ALJ must assess the claimant's residual functional capacity ("RFC") and whether plaintiff is able to perform past relevant work.  A claimant will be found "not disabled" when it is determined that she retains the RFC to perform the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  SSR 82-61, 1982 SSR LEXIS 31, *3.  The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities despite the limitations caused by his or her impairment(s).  20 C.F.R. § 404.1545(a); see also Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000).  Relevant evidence includes "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others."  Fargnoli v. Halter, 247 F.3d 34, 41 (3d Cir. 2001).  The ALJ's finding of RFC must be supported by a clear statement of the facts upon which the assessment is based.  Id. (citing Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).

        Under SSR 96-8p, the Social Security Administration emphasizes that the RFC must take into account all impairments, including those that the ALJ has determined previously at step two to be non-severe:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's

> other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

(SSR 96-8p).  As such, the RFC must consider all functional limitations, including mild limitations from impairments that the ALJ has previously determined to be non-severe.  Curran v. Astrue, 2012 WL 5494616, at *5 (E.D. Pa. Nov. 13, 2012) (finding that the ALJ erred by failing to include mild functional limitations related to plaintiff's non-severe impairment of depression in the hypothetical posed to the vocational expert) (citing Ramirez v. Barnhart, 372 F.3d 546, 554–555 (3d Cir. 2004); Washington v. Astrue, 2009 WL 855893, at *1 (E.D. Pa. Mar. 31, 2009)).

In the instant case, the ALJ found that plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) in that she is able to lift/carry up to ten (10) pounds occasionally and two (2) to three (3) pounds frequently; stand and walk about two (2) hours in an eight-hour workday; and sit about six (6) hours during an eight-hour workday.  Plaintiff can rarely twist, stoop, bend, crouch, or squat; and plaintiff can occasionally climb stairs but never climb ladders.  (Tr. 19).  While the ALJ discusses plaintiff's treatment records, including mental health treatment by Dr. Baker at step four, the ALJ failed to include any mental limitation, even mild limitations, when posing the hypothetical to the vocational expert.

After obtaining the skill and exertional level demands of plaintiff's comparable past relevant work, the ALJ referred the vocational expert to the Disability Determination Form, Exhibit 2A, and had the vocational expert review the listed RFC, which only addressed physical limitations and limited plaintiff to medium work.  (Tr. 67).  The vocational expert noted that there was no limitation for cognitive abilities in this RFC.  Id.  The ALJ then referred the

vocational expert to following hypothetical:

> Q:  . . . . Okay, so, we do have, she is now advanced age, and was closely approaching on her alleged onset date.  And she has more than a high school education.  She's got a college education.  And she has past relevant work including skilled and semiskilled work/  And if this person could do sedentary work, lift, you know, up to approximately 10 pounds occasionally; stand about two hours; sit about six, six hours of an eight-hour workday; and look at the postural.  Use the postural in Exhibit 2A.  Frequently climb ramps/stairs; occasionally ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch, and crawl.  Just hose.  That, that would be consistent with her past relevant work?
>
> A:  Yes.

(Tr. 68).  Notably, this hypothetical did not contain any mental limitations.  The ALJ then

directed the vocational expert to Dr. Baker's mental impairment questionnaire completed by Dr.

Baker on June 26, 2011.  (Tr. 117).

> Q:  Okay, starting at page 25, there's a mental impairment questionnaire, MRFC questionnaire.  Of course, it's a doctor, so you can't really read  - - okay, unable to sustain physical activities.  Well, he's a psychiatrist.  I don't care what he thinks about physical activities.  No, and if I were, were to accept what he says on page 28, she would meet a listing.  But looking at page 27, (inaudible) seriously, but not precluded, understand and remember short, simple instructions, seriously, but not precluded; maintain attention for two-hour segments, maintain regular attention, be punctual - -  would this be consistent with work, (inaudible)?
> A:  No.
> Q:  No, it wouldn't be consistent with work.  Too many, unable to meet competitive standards.
> A:  Correct.

(Tr. 69).  As such, the vocational expert confirmed that a person with the limitations described

by Dr. Baker would be precluded from work.  However, even though the ALJ found mild

limitations at previous steps, the ALJ did not include those limitations when posing hypotheticals

to the vocational expert.  The consideration of plaintiff's mental impairments, even non-severe,

is particularly important since plaintiff's past relevant work involves skilled positions, and

plaintiff's treating physicians have specified that plaintiff's mental and physical impairments are

interrelated.

We find that the ALJ erred in failing to even include the mental limitations that the ALJ himself found – mild difficulties in social functioning and mild difficulties in concentration, persistence, or pace – in the hypothetical posed to the vocational expert. <u>See</u> <u>Curran</u>, 2012 WL 5494616, at *5; <u>Ramirez</u>, 372 F.3d at 554–555.  As such, we recommend remand for further consideration of whether plaintiff's mental impairments limit plaintiff's ability to perform past relevant work.  Moreover, as indicated above, we recommend remand for additional consideration of plaintiff's mental impairments at step two; and thus, if the finding at step two is altered regarding plaintiff's mental impairments, those impairments should likewise be included in fashioning plaintiff's residual functional capacity.

Therefore, we make the following:

<u>RECOMMENDATION</u>

AND NOW, this **25th** day of February, 2014, it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be GRANTED and the matter be REMANDED for further proceedings consistent with this Report and Recommendation.


BY THE COURT:


s/ LINDA K. CARACAPPA
LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE